IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KINDRED HOSPITALS LIMITED PARTNERSHIP d/b/a KINDRED HOSPITAL HOUSTON MEDICAL CENTER, et al., | § § § § § |
| Plaintiffs, | § § |
| VS. | § Civil Action No. 3:16-CV-3379-D § § |
| AETNA LIFE INSURANCE COMPANY, et al., | § § § § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

In this action removed on the basis of ERISA[1] preemption, plaintiffs' motion to remand presents the question whether ERISA completely preempts any of plaintiffs' claims and thus confers federal question jurisdiction. Concluding that it does not, the court grants the motion to remand, but it denies plaintiffs' request for attorney's fees and costs.

I

This is a suit by plaintiffs Kindred Hospitals Limited Partnership d/b/a Kindred Hospital Houston Medical Center, THC Houston, Inc. d/b/a Kindred Hospital-Bay Area, and d/b/a Kindred Hospital Houston-Northwest, and Transitional Hospitals Corporation of Texas, Inc. d/b/a Kindred Hospital Tarrant County-Fort Worth Southwest (collectively, "Kindred"), operators of long-term acute care hospitals, against defendants Aetna Life Insurance

_____

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

Company and Aetna Health, Inc. (collectively, "Aetna"). Kindred sues under state law to recover unpaid insurance payments based on Aetna's representations that insurance would cover the charges.[2] Kindred alleges that, before admitting the patients in question, it sought Aetna's confirmation of what charges would be covered, but that Aetna's payments were less than what it represented would be paid.

Kindred seeks to recover unpaid charges for 15 patients. To establish that this case was removable based on the court's federal question jurisdiction, Aetna need only establish that one of the claims is completely preempted. Aetna focuses its argument on five patients who it asserts, without dispute, were ERISA plan participants or beneficiaries. The court will do so as well.

Before admitting patient T.V.,[3] Kindred used the database Passport OneSource to verify her insurance coverage. The database information, originally provided by Aetna, indicated that T.V.'s Aetna-administered plan included National Advantage Program ("NAP") coverage. Kindred understood NAP coverage to mean that it would be compensated at the rate provided in its contract with third-party network MultiPlan. MultiPlan enters into contracts with hospitals and payors, including Kindred and Aetna, to set payment rates. When hospitals participate in MultiPlan, they agree to provide care to patients whose insurers are MultiPlan members, and to accept payments from insurers at

---

[2] The background facts are drawn from Kindred's state-court original petition ("petition") and from evidence submitted by Aetna in response to the motion to remand.

[3] Kindred's petition refers to the individual patients by their first and last initials.

discounted rates if made within the contracted time limits. After providing care to T.V., Kindred billed Aetna in the ordinary course. Aetna paid Kindred on the claims, but did so at less than the MultiPlan contract rate. Kindred appealed, but Aetna upheld its original decision. Kindred alleges that it was underpaid by $5,843.93, the difference between the rate Aetna represented that it would pay and the amount actually paid. According to Aetna, it paid the T.V. claims at the MultiPlan rate, but it denied particular charges because T.V.'s plan limited coverage for private room charges.

Patient L.J. was a patient at a Kindred hospital on five occasions. Each time, before admitting L.J., Kindred contacted Aetna to verify coverage and terms of payment. Each time, Aetna represented that coverage existed, and that payment would be made at the rate of 60% of usual and customary charges. Kindred understood usual and customary charges to mean its usual billed charges. But when Kindred billed Aetna for the care of L.J., instead of paying 60% of the billed charges, Aetna paid 60% of the MultiPlan discounted rate. Kindred alleges that it was underpaid by $295,629.81, the difference between the rate Aetna represented that it would pay and the amount actually paid. According to Aetna, the underpayment was due to rejection of private room charges that were not covered by L.J.'s plan, not to the rate of payment.

Before admitting patient J.J., Kindred contacted Aetna to verify coverage and terms of payment. "Aetna advised Kindred that J.J. was eligible for coverage, that Aetna would pay primary to Medicare, and that Kindred would be paid based on 300 percent of the Medicare allowable rate." Pet. ¶ 63. When J.J. was admitted a second time, Kindred sought

and received materially similar assurances. When Kindred billed Aetna for care of J.J., Aetna underpaid the claim compared with its prior representations. And while Kindred was seeking further payment on the deficiency, Aetna recouped some of the amount it had already paid, asserting that Medicare had become the primary payor before J.J.'s first admission. Kindred alleges that Aetna's position is both substantively wrong—because Medicare did not become primary payor until after the hospital stays in question—and contrary to Aetna's representations during pre-admission verification. Kindred alleges that it was underpaid by $238,849.83, the difference between what Aetna represented that it would pay and the amount retained by Kindred. According to Aetna, the question whether J.J.'s insurance plan or Medicare was primary is controlled by the terms of the plan.

Before admitting patient T.B., Kindred contacted Aetna to verify coverage and terms of payment. An Aetna representative told Kindred that T.B. was eligible for coverage and that Kindred would be paid 100% of its usual, customary, and reasonable charges after T.B.'s out-of-pocket maximum was met. When Kindred billed Aetna for the T.B. claim, Aetna paid less than what it initially represented. Kindred alleges that it was underpaid by $32,024.12, the difference between what Aetna represented that it would pay and the amount actually paid. According to Aetna, the difference between the billed charges and payment was due to a different interpretation of what was reasonable and customary. T.B.'s plan provided that Recognized Charges, also known as Reasonable and Customary charges, would be reimbursed, but also stated that what was reasonable and customary would be determined by the claims administrator—Aetna.

Before admitting patient J.S., Kindred contacted Aetna to verify coverage and terms of payment. Aetna told Kindred that coverage existed and that Kindred would be paid 100% of its usual and customary charges after J.S.'s out-of-pocket maximum was met. But when Kindred billed Aetna for care of J.S., Aetna paid less than what it initially represented. Kindred alleges that it was underpaid by $124,861.65, the difference between what Aetna represented that it would pay and the amount actually paid. According to Aetna, the payment differed from the billed charges because J.S.'s plan excluded charges in excess of the Recognized Charge for particular care in a geographic area. The plan granted Aetna authority to determine the Recognized Charge.

Kindred sued Aetna in state court for fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, violations of the Texas Insurance Code, breach of written contract, breach of implied-in-fact contract, and declaratory judgment. Aetna removed the case to this court on the basis that one or more of Kindred's claims is completely preempted by ERISA, thereby conferring federal question jurisdiction on this court.[4] Kindred now moves to remand and for its attorney's fees and costs. Aetna opposes the motion.

---

[4] Aetna also contended in its notice of removal that the court had diversity jurisdiction because one of the two Aetna defendants had been improperly joined, but it appears to have abandoned this argument.

II

As the removing party, Aetna "has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Carnes v. Data Return, LLC*, 2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). "In general, defendants may remove a civil action if a federal court would have had original jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)). "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Ordinarily, "[r]emoval is not possible unless the plaintiff[s'] 'well pleaded complaint' raises issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). "There is an exception, however, to the

well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).

> When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.

*Id.* at 207-08 (citation, brackets, and internal quotation marks omitted) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Thus because plaintiffs' state-court original petition ("petition") does not assert claims under federal law, and because Aetna does not contend that the court has diversity jurisdiction,[5] Aetna can establish removal jurisdiction only if ERISA completely preempts one or more of Kindred's state-law claims. *See, e.g.*, *Westfall v. Bevan*, 2009 WL 111577, at *2 (N.D. Tex. Jan. 15, 2009) (Fitzwater, C.J.).

Complete preemption is available under ERISA § 502, the statute's civil-enforcement provision, which "Congress intended to be the exclusive vehicle for suits by a beneficiary to recover benefits from a covered plan." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990); *see also, e.g.*, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) ("Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court."). "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (quoting *Giles v.*

---

[5]*See supra* note 4.

*NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999)). In particular, § 502(a)(1)(B) preempts all suits involving ERISA-governed plans "brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A cause of action falls within the scope of § 502(a)(1)(B), and is therefore completely pre-empted, if (1) the "individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also, e.g.*, *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, 2006 WL 1663752, at *7 (S.D. Tex. June 13, 2006) ("Complete preemption under § 502(a) requires both standing and the lack of an independent legal duty supporting a state-law claim.") (citing *Davila*, 542 U.S. at 210). "To determine whether [plaintiffs'] causes of action fall 'within the scope' of ERISA § 502(a)(1)(B), we must examine [plaintiffs'] complaint[ ], the statute on which their claims are based . . . , and the various plan documents." *Davila*, 542 U.S. at 211. "[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983).

"A state-law claim that is completely preempted under § 502 is transformed into a new federal claim." *Cardona v. Life Ins. Co. of N. Am.*, 2009 WL 3199217, at *4 (N.D. Tex. Oct. 7, 2009) (Fitzwater, C.J.). In other words, complete preemption "eliminates the

state-law claim" and "replaces [it] with a federal claim." *Id.* "'Because they are recast as federal claims,' state-law claims that are completely preempted provide a basis for removal." *Westfall*, 2009 WL 111577, at \*3 (quoting *McLaren v. RailAmerica, Inc.*, 2001 WL 366431, at \*2 (N.D. Tex. Mar. 21, 2001) (Fitzwater, J.)).

III

A

Kindred maintains that this case should be remanded because none of its claims is completely preempted by ERISA. Kindred contends that the claims do not meet the first element of the *Davila* complete preemption standard—that an individual could at some point have brought the claim under ERISA § 502(a)(1)(B)—because Kindred is a third-party health care provider that lacks independent standing to bring ERISA claims. Kindred acknowledges that providers may gain derivative standing as assignees of insureds' claims, but it contends that its petition does not allege such an assignment.

Kindred also posits that its claims do not meet the second element of the *Davila* standard for complete preemption—that no other independent legal duty is implicated by the defendants' actions. Kindred contends that Aetna breached Texas-law duties that govern Aetna's commercial behavior and exist separately from any ERISA duties, and that it seeks to recover based on Aetna's misrepresentations, non-disclosures, and breaches of the MultiPlan contracts, not on Aetna's coverage decisions. Kindred relies on *Memorial Hospital System*, in which the Fifth Circuit held that a provider's Texas Insurance Code misrepresentation claim against an ERISA insurer was not completely preempted. *See Mem'l*

*Hosp. Sys.*, 904 F.2d at 250 (vacating summary judgment against Texas Insurance Code claim, with instructions to remand it to state court).

Kindred cites cases holding that providers' state-law misrepresentation claims were not conflict preempted, which Kindred contends also implicate complete preemption. *See Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011) (holding that ERISA did not preempt provider's state-law claims for misrepresentation, promissory estoppel, or violations of the Texas Insurance Code), *aff'd en banc*, 698 F.3d 229 (5th Cir. 2012); *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.*, 164 F.3d 952, 955 (5th Cir. 1999) (holding that ERISA did not preempt provider's common law and statutory misrepresentation claims).

B

Aetna responds that there is federal question jurisdiction because some of Kindred's claims are completely preempted. It contends that the first element of the *Davila* complete preemption standard is satisfied because Kindred could have brought its claims under ERISA, that the plans in question were ERISA plans, and that Kindred had standing to sue for benefits because it held assignments for many of the patients in question. *See Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003). Aetna maintains that it is of no consequence that Kindred failed to allege that it had assignments from patients because a provider cannot avoid complete preemption by simply denying its status as an assignee. *See Spring E.R., LLC v. Aetna Life Ins. Co.*, 2010 WL 598748, at *3-4 (S.D. Tex. Feb. 17, 2010).

Aetna contends that the second element of the *Davila* standard is satisfied because Kindred's claims essentially challenge coverage determinations, and therefore are not about independent, non-ERISA legal duties.

With respect to Kindred's contract claims based on the MultiPlan agreements, Aetna maintains that a separate provider agreement with an ERISA plan does not create an independent legal duty. Aetna cites *Lone Star OB/GYN Associates. v. Aetna Health Inc.*, 579 F.3d 525, 533 (5th Cir. 2009), for the proposition that, when a separate provider agreement is at issue, preemption depends on whether the plaintiff disputes the rate of payment for covered services (not preempted), or the right to payment for a particular service (preempted). Aetna maintains that Kindred's contract claims in this case dispute the right to payment for particular services, such as private rooms for patients L.J. and T.V., and are therefore completely preempted. Aetna likewise contends that Kindred's claims for "out-of-network" patients—those for whom no MultiPlan agreement existed—essentially dispute coverage determinations, and are completely preempted. Aetna argues that where no provider agreement exists, Kindred's right to payment depends exclusively on patient rights to coverage under their ERISA plans. And Aetna posits that, although Kindred frames some claims as based on promises or misrepresentations, it is the substance, not the plaintiff's characterization, that determines whether the claim falls within ERISA § 502(a). *See Davila*, 542 U.S. at 214.

As for Kindred's declaratory judgment claim, Aetna contends that a declaratory judgment action to require payment of plan benefits is a challenge to Aetna's claims

determination, and therefore falls under ERISA § 502(a). And it maintains that Kindred's only right to payment on these claims arises from assignments of plan benefits.

Regarding Kindred's promissory estoppel claims, Aetna contends that, under Texas law, promissory estoppel is a quasi-contractual action, and the promise must not be part of a valid contract. *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App. 2001, no pet.). Aetna maintains that some of the promises asserted by Kindred are part of the patients' ERISA insurance plan contracts, because they cannot be understood without reference to the plans. For example, Aetna posits that payment for "usual," "customary," and "reasonable" charges, as demanded by Kindred in some of its promissory estoppel claims, depends on the plans' definitions of these terms. *See Found. Ancillary Servs., L.L.C. v. United Healthcare Ins. Co.*, 2011 WL 4944040, at *3 (S.D. Tex. Oct. 17, 2011) (holding that promissory estoppel claim was completely preempted because representation used plan terms "reasonable and fair"). Aetna maintains that the Fifth Circuit's decision in *Access Mediquip*, cited by Kindred, does not control this case because it addresses only conflict preemption. *See Access Mediquip*, 662 F.3d at 378. In addition, Aetna posits that *Access Mediquip* did not address a contract or declaratory judgment claim. *See id.* Finally, Aetna contends that in *Access Mediquip* the insurer's failure to pay was attributed to an internal policy against paying providers who were not surgical facilities, *see id.* at 381, whereas here, the payment shortfalls stem from differing interpretations of plan terms, such as what are "usual," "customary," and "reasonable" charges. Aetna therefore maintains that the representations in this case are more entangled with the ERISA plans than

those in *Access Mediquip*, and that ERISA completely preempts claims arising from them.

C

Kindred replies that provider suits are not preempted when they allege misrepresentations as to payment and coverage, and that, because its claims are for Aetna's misrepresentations, the claims could not have been brought under ERISA, and the first element of *Davila* has not been established.

Kindred also maintains that the second prong of *Davila* has not been established, because Aetna violated independent legal duties. Put differently, Kindred contends that its claims are about the *rate of* payment, not the *right to* payment. *See Lone Star*, 579 F.3d at 530. For example, Kindred denies that private room charges for L.J. and T.V. were affected by a coverage decision. Kindred asserts that Aetna eventually paid private room charges on amended claims for L.J., and private room charges were never billed for T.V. Kindred contends that Aetna approved all services for L.J. and T.V., and any underpayments were due not to coverage determinations, but to disputes about the rate of payment. Kindred also cites a decision by Judge Rosenthal of the Southern District of Texas, in which she held, on similar facts, that Kindred had alleged duties independent of ERISA, and remanded the case to state court. *See Kindred Hosp. Ltd. P'ship v. Aetna Life Ins. Co.*, No. H-15-1509, slip op. at 12-14 (S.D. Tex. Mar. 17, 2016) (Rosenthal, J.).

Kindred also maintains that its declaratory judgment claim is not completely preempted because it seeks to recover on two bases, neither of which is a right under an ERISA plan. In this claim, Kindred seeks a declaration that, with respect to J.J., his plan was

the primary payor and Medicare was secondary, *see* 42 U.S.C. § 1395y(b)(1)(C); and, with respect to four patients, Aetna recouped payments in violation of the voluntary payments doctrine, which may prohibit recovery of payments made voluntarily and with knowledge of the facts, *cf. BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (describing doctrine as a defense to unjust enrichment claims).

IV

The court concludes that none of Kindred's claims is completely preempted under ERISA. Assuming *arguendo* that the first element of the *Davila* standard is met, Kindred has nevertheless established that each of its claims rests on independent legal duties. *See Davila*, 542 U.S. at 210.

A

Kindred's fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and Texas Insurance Code claims implicate independent legal duties and therefore are not completely preempted. The Fifth Circuit has held that a provider's Texas Insurance Code claim for deceptive and unfair trade practices is not completely preempted by ERISA because the claim is independent of the plan's obligations under the insurance policy. *See Mem'l Hosp. Sys.*, 904 F.2d at 250. This rule has remained intact since *Davila* was decided. *See Access Mediquip*, 662 F.3d at 386. And this court has extended the holding in *Memorial Hospital System* to encompass common law misrepresentation claims of the type asserted here. *See Tex. Ctr. for Obesity Surgery, P.L.L.C. v. UnitedHealthCare of Tex., Inc.*, 2014 WL 772437, at *1, *8 (N.D. Tex. Feb. 7, 2014) (Lynn, J.) (holding that provider's intentional

-14-

misrepresentation, constructive fraud, negligent misrepresentation, promissory estoppel, and Texas Insurance Code claims raised independent legal duties, and were not completely preempted by ERISA).

Kindred's misrepresentation claims in this case are independent of obligations under the plans. Aetna contends that Kindred's only right to payment arises from its status as assignee of ERISA benefits, but this position omits Kindred's common law and statutory rights based on Aetna's pre-admission representations. *See Tex. Ctr. for Obesity Surgery*, 2014 WL 772437, at *6 (holding that an insurer's representations may create state-law duties separate from ERISA). Aetna also contends that Kindred's promissory estoppel claim falls within the ERISA insurance contracts because the promise was to pay usual and customary charges, which the plans define. But a complaint's references to similar plan language have been held not to require consultation of the plan's terms to determine whether they were misleading. *See Acccess Mediquip*, 662 F.3d at 385; *Kindred Hosp.*, at 13. Accordingly, Kindred's fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and Texas Insurance Code claims are not completely preempted.

B

Kindred's breach of written contract and breach of implied contract claims are likewise not completely preempted by ERISA because Kindred has shown that independent legal duties are implicated by the MultiPlan contracts. Contract claims under a provider agreement are not completely preempted when they dispute the *rate of* payment under the agreement rather than the *right to* payment under the insurance plan. *Lone Star*, 579 F.3d

at 530. Aetna has not met its burden to show that the payment shortfalls alleged are due to coverage determinations rather than rate disputes. Aetna's identification of private room charges for L.J. and T.V., which it says were denied for lack of coverage, does not demonstrate a coverage dispute because Kindred has submitted evidence that these charges either were paid (albeit at a reduced rate) or were not submitted in the first place. Accordingly, Kindred's contract claims are not completely preempted. *See id.* at 532.

C

Finally, Kindred's declaratory judgment claim is not completely preempted by ERISA. Aetna contends that this claim is a direct challenge to its coverage decisions, and that Kindred's only rights to payment on it arise from assignments of ERISA benefits. But Kindred's claim alleges that Aetna acted contrary to a Medicare statute and the state-law voluntary payments doctrine, not contrary to the ERISA insurance plans. Kindred has therefore alleged violations of legal duties independent of the patients' ERISA plans. Accordingly, Kindred's declaratory judgment claim is not completely preempted by ERISA. *See Davila*, 542 U.S. at 210.

V

Kindred moves to recover its attorney's fees and costs associated with the removal of this case.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only

where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *In re Enable Commerce, Inc.*, 256 F.R.D. 527, 533 n.14 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). "The decision to award fees is a matter of discretion." *Fathergill v. Rouleau*, 2003 WL 21467570, at *2 (N.D. Tex. June 23, 2003) (Fitzwater, J.). A fee award is limited to the "fees and costs incurred in federal court that would not have been incurred had the case remained in state court." *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997).

Because the determination whether ERISA completely preempted the state-law claims in this case was somewhat complex, and the record does not demonstrate that Aetna lacked an objectively reasonable basis for seeking removal, the court denies Kindred's motion for costs and attorney's fees.

* * *

Kindred's January 5, 2017 motion to remand is granted. The court holds that it lacks subject matter jurisdiction, and, pursuant to 28 U.S.C. § 1447(c), remands this case to the 101st Judicial District Court of Dallas County, Texas. The clerk shall effect the remand according to the usual procedure. The court denies Kindred's motion for costs and attorney's

fees.

**SO ORDERED**.

June 9, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE